THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| DALAS THEREISA CROWDER, *et al.*,<br><br>*On her own behalf and on behalf of all Others similarly situated,*<br><br>　　　　　　　*Plaintiffs*,<br><br>v.<br><br>AMERICREDIT FINANCIAL SERVICES, INC., *et al.*,<br><br>　　　　　　　*Defendants*. | Civil Action No. 1:06cv707 JFM |

**PLAINTIFFS' REVISED MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION FOR AN
<u>AWARD OF ATTORNEYS' FEES AND EXPENSES</u>**

**I.　　INTRODUCTION**

Plaintiffs' counsel, who have jointly prosecuted the above-captioned action and negotiated a favorable settlement with Defendants AmeriCredit Financial Services, Inc. ("AmeriCredit"), Cavalry Investments, LLC, and Cavalry Portfolio Services, LLC (collectively "Defendants"), respectfully submit this Memorandum in Support of their Application for an Award of Attorneys' Fees and Expenses pursuant to FED. R. CIV. P. 23(h) and 54(d)(2).

As set forth in this Memorandum, Plaintiffs' counsel request that the Court award 33⅓% of the common fund settlement. Such an award is both appropriate and reasonable, especially considering the history and results of this case, as outlined in Part II of this Memorandum, the standards and requirements set forth in the Maryland Rules of Professional Conduct and the actions of other courts in cases discussed herein. *See* Part III. No additional or separate fees are being sought for the significant non-cash benefit conferred on the Class.

In the end, the ultimate touchstone of any fee recovery is related to success. It is undeniable that counsels' efforts on behalf of the Class obtained substantial restitution for the Class and further required Defendants to cease using the defective pre-sale and post-sale accounting disclosures. Defendants also agreed to waive all outstanding balances and/or deficiencies owed in connection with the class members' installment sale contracts, and to dismiss any pending lawsuits grounded upon an alleged deficiency or balance due with respect to any of those contracts. Furthermore, Defendants will take the appropriate steps to contact the three Credit Reporting Agencies to delete the trade line relating to the default and resulting repossession and sale of the Class members' automobiles. In total, this settlement will help approximately 2,550 consumers.

These results justify the award requested. Further in support of this application is the affidavit of Martin E. Wolf ("Wolf Affidavit"), which is attached hereto as Exhibit A.

## II.     BACKGROUND AND PROCEDURAL HISTORY

As the Court is aware, this settlement resolves a consumer class action lawsuit – *Crowder v. AmeriCredit Financial Services, Inc., et al.*, Civil Action No. 1:06-cv-707 JFM.  Plaintiffs allege in the Complaint that AmeriCredit effected improper vehicle repossessions through form notices of the pending sale and, thereafter, form notices of the claimed deficiency that failed to comply with all of the requirements of the Closed End Credit Grantor law and in circumvention of Maryland law.  Defendants represented to Plaintiffs counsel that during the Class period: 1) approximately 2,550 vehicles were repossessed using these defective forms; 2) the private sales of these repossessed vehicles resulted in deficiency balances of approximately $20,187,760; and 3) Defendants collected approximately $X,XXX,XXX.

In the settlement of this action with Defendants, Plaintiffs have achieved a superior result for the Class. First, as a result of this lawsuit, Defendants have agreed to pay the Class as restitution $2,635,000, which is a substantial reimbursement of the amounts collected from the Class, less a proportionate share of Plaintiffs' Counsel's attorneys' fees and expenses. This settlement payment represents a remarkable disgorgement of funds paid by Class members in this case.

Second, Defendants have represented that they no longer use the defective pre-sale and post-sale accounting disclosures and that they have modified their respective pre-sale and post-sale accounting disclosures to be in compliance with Maryland law.

Third, Defendants have agreed to waive all outstanding balances and/or deficiencies that are owed in connection with the class members' installment sale contracts and dismiss any pending lawsuits grounded upon an alleged deficiency or balance due with respect to any of those contracts. The outstanding and/or deficiency balances that Defendants have agreed to waive are believed to total in excess of $20,000,000.

Fourth, Defendants have agreed to delete the trade line relating to the default under the installment sale contract that AmeriCredit held. This is a recovery that is extraordinarily valuable to each Class member that is hard to value in actual dollars, but is a remedy that the Class could not have recovered had this matter gone to trial.

Fifth, the Settlement provides for a streamlined process for submitting a claim in this case. In fact, it does not even require Class members to submit a claim form. All Class members who do not opt out from the settlement, will automatically receive the equitable remedies listed above. Furthermore, all Class members who are entitled to a cash payment from the Settlement Fund and who do not opt out from the settlement, will automatically receive a check from the

3

Settlement Fund.  Paraphrasing Judge Gertner in *Mazola v. The May Department Stores Company*, CA 97 CV 10872-NG, pp. 8-9 (D. Mass), the Settlement, is not illusory for the Class members, and lucrative only for the lawyers. Consumers will receive real dollars, real relief.  By all accounts, it is one of the best possible settlements obtained in a consumer class action lawsuit.

Finally, recognizing that some Class members can no longer be located and that there may be some Class members who fail to cash their settlement checks, the Settlement Agreement provides that any monies that remain unclaimed or undistributed from the Settlement Fund, after all Class members who can be located are paid, will be given to a *cy pres* fund and, in turn distributed to non-profit 501(c)(3) institutions, to be approved by the Court. The parties have agreed that, with the approval of the Court, the residue funds be distributed as *cy pres* awards and be apportioned, to the extent residual funds exist after more than 190 days after the Settlement Administrator distributes the Class member checks between two charitable organizations: Public Justice Center, Inc.; and Maryland Consumer Rights Coalition, Inc.

This settlement is the result of diligent and efficient efforts by Plaintiffs' counsel, who have accomplished a great deal in the time that this case has been pending. It is especially beneficial to the Class, considering the real risks Plaintiffs faced. Plaintiffs were by no means assured of victory.  Defendants, represented by experienced counsel, would have contested liability and damages under a wide variety of theories, including defenses under CLEC. Had this matter proceeded through litigation, Defendants would have strenuously contested class certification. Plaintiffs also would have likely faced a comprehensive motion for summary judgment which could have been dispositive against the Plaintiffs.

Throughout the litigation, Plaintiffs' counsel struck a balance between an active and aggressive litigation strategy on behalf of the Class on the one hand, and a responsible approach

to negotiations on the other. Plaintiffs' counsel, for example, conducted informal discovery, reviewed Class members' original loan transaction and repossession documents, conducted extensive research into the applicable law with respect to the issues raised in the Complaint, and interviewed borrowers with knowledge of the Defendants' practices.

Plaintiffs' counsel, however, also engaged counsel for Defendants in lengthy, arduous and intense arm's-length settlement negotiations.

After this Court gave preliminary approval to the Settlement, The Casey Group, LTD., based upon the class list compiled by Defendants, mailed to potential Class members a total of 2,550 notices of the proposed settlement. The mailed Notice specifically notified the Class that Plaintiffs' counsel intended to apply for attorneys' fees equal to approximately 33⅓% of the Settlement Fund.

Since the mailing of the Class Notice, Plaintiffs' counsel have had literally hundreds of telephone calls and letters from Class members. Class Counsel have provided advice to Class members on whether they are entitled to payments from the Settlement Funds, clarified the terms of the Settlement Agreement and answered questions relating to the protocol for receiving a settlement check. Class Counsel expect that their involvement and interaction with the Class will continue until beyond the date of full distribution of the settlement monies. Moreover, Class counsel have played a significant role in ensuring that Defendants, in conjunction with the Settlement Administrator, identified all eligible Class members.

Based upon the criteria described below, and taking into account the results achieved and the actions taken by Plaintiffs' counsel in prosecuting this case, Plaintiffs' counsel submit that their application is reasonable and appropriate and should be granted.

## III.  LEGAL STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES

### A.     Percentage Awards of Attorney's Fees from Common Fund Settlements are Commonplace

Our legal system has long recognized as a fundamental principle of fairness that attorneys who produce or preserve a common fund or confer a substantial benefit upon others should receive a fair award of attorney's fees. *See e.g., Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1976) ("To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses, would be to enrich the others unjustly at the plaintiff's expense"); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ("persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense"). Where, as in this case, the Settlement Agreement results in equitable relief and the establishment of a settlement fund – that exceeds the illegal fees collected from the Class that will benefit 2,550 Class members, such an award is particularly appropriate. As one court noted in memorable language, a fee award is awarded in such circumstances to ensure that attorneys will continue to take the risks and invest the resources to confer such benefits:

> Were it not for the efforts of the attorneys, there would be no funds to dispute. *Thou shalt* not muzzle the ox that treadeth out the corn.

*Equifax. Inc. v. Luster*, 463 F. Supp. 352, 358 (E.D. Ark. 1978), *aff'd per curiam*, 604 F.2d 31 (8th Cir. 1979), *cert. denied*, 445, U.S. 916 (1980).

The general approach is that attorney's fees are awarded as a percentage of the common fund. *See* 4 H. Newberg and A. Conte, *Newberg on Class Actions*, §14:6 (4th ed. 2003). Courts generally have *mandated* the percentage of recovery method for determining appropriate fees in common fund cases, and have typically awarded between 25% and 40%. *See e.g., Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999); *Williams v. MGM-Pathe Communications, Co.*, 129 F.3d 1026 (9th Cir. 1997); *Aguinaga v. United Food and Commercial*

*Workers International Union*, 993 F.2d 1480, 1482 (10th Cir. 1993) (quoting *Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973)) ("successful plaintiff is awarded attorneys' fees because his suit creates 'a common fund, the economic benefit of which is shared by all members of the class'"); *Swedish Hospital Corporations v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condominium Association v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Edmonds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987) (noting that the percentage-of-the-fund method is the preferable approach to use in determining a reasonable fee in common fund cases).

    b.    **The Factors in Determining an Appropriate Percentage Fee Award from the Common Fund**

The factors that will affect the appropriate percentage to be awarded as a fee in any particular case are relatively similar from jurisdiction to jurisdiction. *Camden 1 Condominium Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). As Professor Newberg notes:

> No general rule can be articulated on what is a reasonable percentage of a common fund. A district court may use its discretionary powers to determine what is a reasonable and fair award from a common fund, where the fund itself represents the benchmark from which reasonableness is measured. Usually 50 percent of the fund is the upper limit on a reasonable fee award from a common fund, in order to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented.

4 H. Newberg and A. Conte, *Newberg on Class Actions*, § 14:6. In the end, the methodology for awarding attorney's fees to class counsels will vary depending upon the case and the nature of the recovery by the class and several different methods for analyzing the reasonableness of the fee "may be appropriate depending upon the circumstances." *In re Washington Public Power Supply System Litigation*, 19 F.3d 1291, 1295 (9th Cir. 1994).

The 33⅓% award of the monetary fund only requested by Plaintiffs in this case is in line with the award in federal cases cited above, and is identical to the award approved by this Court in 2004 in *Keneipp v. Fountainhead Title Group, et al.*, Civil Action No. WMN 03-cv-02813,

*Gray v. Fountainhead Title Group*, Civil Action No. WMN 03-cv-01675 and *Phipps v. Fountainhead Title Group*, Civil Action No. WMN-03-cv-02646.

It is also in line with the fee typically awarded in this state for contingency fee class actions. *See Greer v. Crown Title Corp.*, Case No. 24-C-02001227 (Cir. Ct. Balt. City) (2005) (awarding 33⅓% to class counsel in sham ABA class action *in addition to* reimbursement of counsel's out-of-pocket expenses) (Noel, J.); *LeBrun v. Nationwide Motor Sales Corp.*, Case No. 03-C-02-005144 (Cir. Ct. Balt. County) (2005) (awarding 33⅓% to class counsel in consumer class action *in addition to* reimbursement of counsel's out-of-pocket expenses) (Byrnes, J.); *Dua v. Comcast Cable Communications*, Case No. 03-C-99-002158 (Cir. Ct. Balt. County) (2003) (awarding 33⅓% to class counsel in consumer class action *in addition to* reimbursement of counsel's out-of-pocket expenses) (Byrnes, J.); *Duffy v. Jerry's Chevrolet*, Case No. 03-C-00-008650 (Cir. Ct. Balt. County, Settled 2002) (Dugan, J.) (33⅓% fee); *Gilleland v. Blue Cross and Blue Shield of Maryland, Inc.*, Case No. 03-C-95-011918 (Cir. Ct. Balt. County, Settled 1998) (Bollinger, J.) (33⅓% of fund); *Berger v. First National Bank of Maryland*, Case No. 85-CG-2289 (Cir. Ct. Balt. County, Settled 1987) (Fader, J.) (awarding 33⅓% of fund in a class action); *Talbot v. Mid-Atlantic Coke Coca-Cola Bottling Co, Inc.*, Case No. 87-CG-4888 (Cir. Ct. Balt. County, Settled 1993) (Nickerson, J.) (same).

Ultimately, the effort of counsel and the results achieved for the Class must be considered in the context of the individual case. The touchstone of this approach is that the fee should be judged against the factors set forth in Maryland Rule of Professional Conduct 1.5, which provides general guidelines for determining the reasonableness of attorneys fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and,
(8) whether the fee is fixed or contingent.

Maryland Rule of Professional Conduct 1.5(a).[1]

Considering each of these factors, it is clear that Plaintiffs' counsels' request for a 33⅓% fee of the Settlement Fund is both reasonable and appropriate.

### (i) This Matter Was Time Intensive and Involved Novel and Difficult Legal Issues

Plaintiffs' counsel achieved a superior settlement of this Class Action. The settlement confers a significant financial benefit on the Class and significant non-monetary relief as well. In reaching terms on a settlement – and having Defendants agree to establish a common fund that provides the Class substantial restitution – Plaintiffs' counsel faced numerous difficult and novel legal questions involving, *inter alia*, proof of harm, measuring damages for the Class, and the methodology for determining Class membership. Indeed, the settlement negotiations themselves took several months to complete and required United States Magistrate Judge Paul W. Grimm's extensive involvement.

---

[1] This approach is consistent with the standard for awarding fees and costs in Maryland state courts, which was most recently articulated in *United Cable Television of Baltimore v. Burch*, 354 Md. 658, 686-87, 732 A.2d 887, 902-903 (1999). In *Burch*, which provided for a $7.6 million fund in a Class action brought in the Circuit Court for Baltimore City alleging overcharges by the City's cable television provider, Judge Rodowsky noted that the ultimate fee award in a case is within the sound discretion of the Court:

> There is no need in the present case for this Court to mandate a particular methodology. As the circuit court described its process, it determined the award basically as a percentage of the fund, and then checked that result against the factors in Model Rule of Professional Conduct 1.5(a). This is a blend of the approaches advocated by the parties, and, as a methodology, it was within the discretion of the circuit court.

354 Md. at 687, 732 A.2d at 903.

It is also unquestionable that the results achieved in this case would not have been possible without the determination and mixed talent and skills of joint representation by private counsel throughout the litigation. Plaintiffs have faced significant opposition from experienced defense counsel. Plaintiffs' counsel also pursued informal discovery and took significant steps to confirm the extent of the challenged practice.

**(ii)     Opportunity Costs**

The representation of Plaintiffs in this matter was a significant undertaking for their counsel, requiring substantial time and attention. It is readily apparent from the Wolf Affidavit (attached hereto as Exhibit A), that time spent by counsel on this litigation – literally hundreds hours – displaced time from other matters, including employment for paying clients. Indeed the nature and complexity of class action litigation, if it is to be handled professionally and effectively, requires a substantial allocation of time, staff, and other resources. This factor militates in favor of a substantial fee award.

**(iii)    The Fee Requested is Within the Range of Awards in Similar Cases Both in and out of Maryland**

The fee requested by Plaintiffs, one-third of the Settlement Fund, is well within the range of awards allowed in Class actions by courts in Maryland, and is especially appropriate given the results achieved by the counsel. In fact, it is identical to the award approved by this Court in 2004 in *Keneipp v. Fountainhead Title Group, et al.*, Civil Action No. WMN 03-cv-02813, *Gray v. Fountainhead Title Group*, Civil Action No. WMN 03-cv-01675 and *Phipps v. Fountainhead Title Group*, Civil Action No. WMN-03-cv-02646. *See also Greer v. Crown Title Corp.*, Case No. 24-C-02001227 (Cir. Ct. Balt. City) (2005) (awarding 33⅓% to class counsel in sham ABA class action *in addition to* reimbursement of counsel's out-of-pocket expenses) (Noel, J.); *LeBrun v. Nationwide Motor Sales Corp.*, Case No. 03-C-02-005144 (Cir. Ct. Balt. County)

(2005) (awarding 33⅓% to class counsel in consumer class action *in addition to* reimbursement of counsel's out-of-pocket expenses) (Byrnes, J.); *Maisonette v. Comcast Cable Communications*, CAL 98-02283 (Cir. Ct. P.G. County) (2004) (awarding 33⅓% to class counsel in consumer class action *in addition to* reimbursement of counsel's out-of-pocket expenses); *Dua v. Comcast Cable Communications*, Case No. 03-C-99-002158 (Cir. Ct. Balt. County) (2004) (same) (Byrnes, J.); *Duffy v. Jerry's Chevrolet*, Case No. 03-C-00-008650 (Cir. Ct. Balt. County, Settled 2002)(Dugan, J.) (same); *Gilleland v. Blue Cross and Blue Shield of Maryland, Inc.*, Case No. 03-C-95-011918 (Cir. Ct. Balt. County, Settled 1998) (Bollinger, J.) (same); *Berger v. First National Bank of Maryland*, Case No. 85-CG-2289 (Cir. Ct. Balt. County, Settled 1987) (Fader, J.) (same); *Talbot v. Mid-Atlantic Coca-Cola Bottling Co, Inc.*, Case No. 87-CG-4888 (Cir. Ct. Balt. County, Settled 1993) (Nickerson, J.) (same).

The requested percentage award also is well within the range allowed in Class actions by courts in other circuits and states. *See e.g., Smith v. FMC Corp*, 225 F. Supp. 2d 707 (S.D. W. Va. 2002) (awarding fees and cost equaling 48.7% of the Class settlement fund); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996) (awarding 38%); *Goodrich v. E.F. Hutton Group, Inc*, 681 A.2d 1039 (Del. 1996) (awarding fees of 33⅓% of gross amount paid out to claimants).

In line with these cases, Plaintiffs' application for a fee of 33⅓% of the total value of the Settlement Fund is reasonable.

### (iv)   The Result Obtained for the Class Was Superior

The Settlement Agreement in this case is multi-faceted and provides the Plaintiff Class with substantial relief. Although the benefits of this settlement are outlined above, *see* Part II, it is worth repeating that Defendants are returning $2,635,000$^{00}$ to the Class. Each Class member that is entitled to a portion of this fund will receive a check equaling the total payments collected

by Defendants above the amount financed and/or after Class members vehicles were repossessed, minus an amount attributable to attorney's fees and costs.

Equally significant, the parties have agreed that any residual of the Settlement Fund will not be returned to the Defendants, but rather, will be distributed to charities through a *cy pres* fund. The proposed non-profit institutions – Public Justice Center, Inc. and Maryland Consumer Rights Coalition, Inc. – provide community development, legal assistance for the poor. In the current atmosphere of cutbacks in funding for organizations that assist the poor, it is appropriate that the *cy pres* awards – "derived from the Norman French expression *cy pres comme possible*, which means 'as near as possible'" – be devoted to organizations that fit that purpose. *Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n*, 84 F.3d 451, 455 n.1 (D.C. Cir. 1996).

In addition to the cash payments to eligible Class members, the proposed settlement also provides for enormous non-cash benefits to be conferred upon the Class and the public interest at large. It requires Defendants to: stop using the defective pre-sale and post-sale accounting disclosures; waive over $20,000,000 in Class member deficiencies; and request that the three major Credit Reporting Agencies delete the trade line relating to the default and repossession under the installment sales contract held by Defendants.

While this aspect of the settlement does not take the form of cash deposited in a bank, it has clear and significant monetary value.

Just as Class Counsel deserve to be compensated for the creation of the Settlement Fund discussed above, an award of fees to the Class Counsel based upon the non-cash value of the equitable relief is warranted under the "substantial benefits" doctrine (sometimes also referred to as the "common benefit" doctrine). This doctrine, which has been called a logical "corollary" of

the common fund doctrine, has twice been embraced by the U.S. Supreme Court. In *Mills v. Electric Auto-Lite Company*, 396 U.S. 375 (1970), a stockholder's action prevented the distribution of a misleading proxy solicitation. While there was no fee-shifting statute available, and though the action had created no common fund, the Court awarded the stockholder's attorney a fee from the corporation. *Mills* notes that a fee should be awarded where:

> [T]he litigation has conferred a substantial benefit on the members of an ascertainable Class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the cost proportionately among them.

396 U.S. at 393-394. In *Hall v. Cole*, 412 U.S. 1 (1973) a union member who had been expelled for criticizing the union's leaders sued the union and was reinstated as a member. The Court awarded attorneys' fees, holding that the plaintiff had conferred a substantial benefit upon all union members by helping uphold the democratic procedural rights of the union.

Many states have also accepted the substantial benefits/common benefit doctrine. *E.g. Brown v. State*, 565 So. 2d 585 (Ala. 1990); *Milsap v. Lane*, 706 S.W. 2d 378, 288 Ark. 439 (Ark. 1986); *Ginsberg v. Keehn*, 550 So. 2d 1145 (Fla. Dist. Ct. App. 1989); *Neese v. Richer*, 428 N.E. 2d 36 (Ind. Ct. App. 1981); *Black v. NuAire, Inc.*, 426 N.W. 2d 203 (Minn. Ct. App. 1988); *Silva v. Botsch*, 437 A.2d 313, 121 N.H. 1041 (N.H. 1981); *City Nat'l Bank & Trust Co. v. Owens*, 565 P.2d 4 (Okla. 1977); *Couy v. Nardei Enterprises*, 587 A.2d 345, 402 P.A. Super. 468 (Pa. Super. Ct. 1991); and *Hannewald v. Fairfield Communities, Inc.*, 651 S.W. 2d 222 (Tenn. Ct. App. 1983).

It is reasonable to double the overall value of the settlement based upon the non-cash components, including the *cy pres* award and equitable aspect of the settlement. Class counsel, however, are **not** asking this Court to award a contingent percentage of the **non-cash** benefit, but an analysis of the requested fee to the total value of the benefit conferred would properly assess

the requested fee to be only a very modest percentage of the total benefit conferred upon the Class by the litigation (~ 3.6%).

It is certain that during the Class payment period, numerous additional questions and problems will arise which Plaintiffs' counsel will need to address. These tasks, which can be very time consuming, are ordinarily the subject of a separate fee award in Class litigation. 4 H. Newberg & A. Conte, *Newburg in Class Actions*, §11.40 (4th ed. 2003). Plaintiffs' counsel are not requesting to be separately compensated for this aspect of the settlement.

A final aspect of the settlement that provides an additional significant benefit to the Plaintiffs is the fact that the settlement provides for a streamlined process for submitting a claim in this case. In fact, it does not even require Class members to submit a claim form. By avoiding a time-consuming claims process which certainly would have left many eligible members of the Class without a settlement check, Plaintiffs have saved and conserved valuable time and resources.

### (v) The Time Limitations Imposed on Counsel

As noted above, this matter required a significant dedication of time on the part of Plaintiffs' counsel. Counsel spent literally hundreds of hours reviewing records, crafting legal theories, litigating the substantive issues, and addressing the issues and concerns of Class members in connection with the settlement.

### (vi) The Nature of the Relationship Between the Attorneys and the Class

In this case, Plaintiffs' counsel did not merely obtain relief from Defendants' deceptive practice of issuing improper pre-sale and post-sale accounting forms; rather, counsel settled this matter in a manner that will benefit all of Defendants' customers. As noted above, in addition to the benefit to the 2,550 past transactions, each and every future AmeriCredit customer will see

tangible results from this litigation – at a minimum in the form of proper notices and a legitimate opportunity to redeem their vehicle and attend the sale.

### (vii) Plaintiffs' Counsel are Experienced and Reputable

The standing and prior experience of Plaintiffs' counsel are also relevant in determining fair compensation. Plaintiffs' counsel are recognized nationally as leading and skillful practitioners in the field of complex Class actions. *See* Exhibit A (Wolf Affidavit). The fact that Plaintiffs were competently represented undoubtedly played a role in bringing Defendants to the settlement table.

### (viii) The Recovery was Completely Contingent

Plaintiffs' counsel prosecuted this action on behalf of their clients on a fully contingent basis and at considerable risk. If this were non-Class action litigation, the customary fee arrangement would be contingent, based upon a percentage of the recovery, typically in the 33⅓ to 40 percent range. *See e.g., Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986); *Cf Collins v. United Pacific Ins. Co.*, 315 Md. 141, 154, 553 A.2d 707, 713 (1989) (finding that one-third contingent fee is customary and reasonable in Maryland). During the time that this case was pending, Plaintiffs' counsel received no compensation, while expending substantial funds and resources for the benefit of the Class. *See* Exhibit A (Wolf Affidavit). As important, had Plaintiffs lost, counsel would have received no compensation either from the named Plaintiff or the Class.

Despite the competent and diligent efforts of counsel, at no time was success guaranteed. Indeed, from the beginning, Plaintiffs' counsel faced serious risks regarding liability and the ability to establish harm. Those issues were explained in the filed Settlement Agreement dated January 5, 2007, and are discussed in more detail in the pleadings – filed contemporaneously

with this Application for Award of Attorney's Fees and Expenses – requesting the Court to confirm the settlement. Suffice it to say that the multitude of legal issues in this case, any one of which, if resolved against the Plaintiffs – including class certification – could have been dispositive, made this case risky and recovery uncertain.

Even a victory at trial would not have guaranteed Plaintiffs' ultimate success, since the Defendants no doubt would have pursued appeals. As a result of the settlement, however, Class members will be able to receive the benefits of the settlement immediately, without uncertainty or delay. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992) (fee award remanded to district court for revision, with admonition "that the failure to make any provision for risk of loss may result in systematic undercompensation of Plaintiffs' counsel in a Class action case").

### IV.   PLAINTIFFS' COUNSELS' REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES SHOULD BE APPROVED

Plaintiffs' counsel request that they be reimbursed from the Settlement Fund for the total cost and expense incurred in connection with this action totaling **$675.40.** The requested amount is reasonable in light of the status of the litigation at the time of settlement, and represents the actual expenses incurred by the law firms representing the Plaintiffs and class. *See* Exhibit A (Wolf Affidavit) (detailing the type, amounts, and total expenses by each of the law firms representing the Plaintiffs). The expenses incurred in this case were reasonable and necessary in order to obtain the successful result. *In re Mid-Atlantic Toyota Antitrust Litigation*, 605 F. Supp. 440, 448 (D. Md. 1984) (prevailing party entitled to traditional costs and expenses where they were crucial to the resolution of the case); 4 H. Newberg, *Newberg on Class Actions*, §14:2 (4th ed. 2003) (noting that "it is long settled, based largely on windfall and unjust enrichment

principles, that the attorneys who created that Class recovery are entitled to be reimbursed from the common fund for their reasonable litigation expenses").

As the court noted in *Strang v. JHM Mortgage Sec. Ltd. Partnership*, 890 F. Supp. 499, 503 (E.D. Va. 1995), the award of costs is to be paid from the Settlement Fund and "should be borne equally by the beneficiaries of the Class action."

## V. CONCLUSION

This Application seeks amounts that are reasonable when considered in light of the applicable criteria. Accordingly, Plaintiffs' counsel respectfully requests that the Court award Plaintiffs' counsel attorneys' fees of one-third (33⅓%) of the Settlement Fund and reimbursement of litigation expenses of $675.40.

                                                        Respectfully submitted,

Date: June 6, 2007

/s/ Martin E. Wolf
Martin E. Wolf (Bar No. 09425)
Richard S. Gordon (Bar No. 06882)
QUINN, GORDON & WOLF, CHTD.
102 W. Pennsylvania Avenue, Suite 402
Towson, Maryland 21204
(410) 825-2300

Mark H. Steinbach (Bar No. 26538)
O'TOOLE, ROTHWELL, NASSAU &
STEINBACH
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550

Peter A. Holland (Bar No. 10866)
Benjamin H. Carney (Bar No. 27984)
THE HOLLAND LAW FIRM, P.C.
Clock Tower Place
1410 Forest Drive, Suite 21
Annapolis, Maryland 21403
(410) 280-6133

Attorneys for Named Plaintiff and the Class